Abram I. Elkus, of New York City (Carlisle J. Gleason, of New York City, on the brief), for appellant.

William N. Dykman, of Brooklyn (Francis L. Archer, of Brooklyn, on the brief), for plaintiff-respondent.

Louis Marshall, of New York City (Louis Malthaner, of New York City, on the brief), for respondent Caroline M. Bovee.

BURR, J. The order denying appellant's application to be relieved of its bid was made and entered on the 26th day of April, 1912. More than a month thereafter an application was made for an order appointing a referee to take the affidavits of certain persons named to be used upon the hearing of another motion by the Esseff Realty Company to be relieved from its bid upon the same grounds which were made the basis of the preceding application. That motion was denied, and from the order of denial this appeal is taken.

The order must be affirmed. No permission was given to renew the previous motion. It appears from the moving papers that the evidence sought to be obtained through these affidavits is not of the character of newly discovered evidence, but that an attempt is to be made to retry a question once litigated and decided adversely to the moving party by calling further witnesses to testify as to facts involved in the original controversy and determined therein.

The order must be affirmed, with $10 costs and disbursements. All concur.

<hr>

(75 Misc. Rep. 587.)

### In re MARSH'S ESTATE.

#### (Surrogate's Court, Cattaraugus County.   February, 1912.)

1. WILLS (§ 820*)—CONSTRUCTION—LEGACY—CHARGE ON REALTY.

Where testator was the owner of two farms at the time of the making of his will with sufficient personalty thereon to properly operate them, so that his accumulations would be sufficient, at his death within two years thereafter, to pay two legacies charged by the will upon his real estate "to the end that they be paid," there is no intention shown to exclusively charge the payment of the legacies on the real estate in exclusion of the personalty, so far as applicable, and it must be applied in extinguishment of the legacies before the real estate can be used.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2114–2119, 2121; Dec. Dig. § 820.*]

2. WILLS (§ 826*)—CHARGE ON REALTY.

It is incumbent on parties claiming that legacies are an exclusive charge on the real estate to show that it was testator's intention to absolutely exclude the personal property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2128–2138; Dec. Dig. § 826.*]

In the matter of the judicial settlement of the estate of Henry Marsh. Decree rendered.

Charles E. Congdon, for executor.

D. E. Powell, special guardian, for contestant.

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DAVIE, S.  The will of decedent was admitted to probate June 3, 1904.  At the time of his death he owned two farms, upon which, as appears from the inventory filed herein, there were 31 dairy cows, 1 two year old bull, a team of horses, and a quantity of farming utensils.  By the terms of his will he gave his widow the use, income, and profits of his entire estate, real and personal, during her life.  She died June 23, 1910.  One of the horses died and the other was sold by the widow and the proceeds of the sale were received by her; but, inasmuch as she had paid various debts of the decedent, no objection is made to the executor's account in consequence of his having failed to account for the proceeds of such sale.  The dairy of 31 cows, together with the bull, still remains on hand.  One of the farms, together with the 16 cows, has been rented to a son of the decedent since the death of the widow, and the other farm to another son, with 15 cows thereon.

The executor charges himself in his account filed with rent received from both farms during the year 1910, $364.60, and also with the same amount received during the year 1911. . No objection is made to the executor's having incorporated in his account these amounts derived as rent, although a portion thereof is rent of real estate and belongs to the devisees under the will, and the balance thereof is rent for the use of the personal property upon said farms.  Such sums, however, must necessarily be apportioned as rent for the realty and for the use of the personal estate.  The evidence shows that the net value of the use of ordinary dairy cows during the season is $5.  The season of 1910 was practically half over at the date of the widow's death.  The executor should account for the use of the cows during the balance of that year and during the year 1911, amounting to the sum of $7.50 a head and making in all the sum of $232.50; and his account should be surcharged to that extent, and this sum added to the assets of the estate still remaining on hand.  It also becomes necessary, as an incident to this accounting and distribution, to construe certain provisions of decedent's will, as both the executor and contestants have in writing requested such construction.  The third item of the will provides as follows:

"I give and bequeath to my granddaughter, Louisa Marsh, the daughter of my deceased son, August, the sum of Five Hundred Dollars."

The fourth item of the will is as follows:

"I give and bequeath to my son Moses the sum of $500.00; and I do hereby declare and direct that this legacy and the legacy of Five Hundred Dollars to my granddaughter, shall be a charge on my real property to the end that they be paid; the said legacy to my granddaughter shall not be paid to her till she is eighteen years of age."

By the fifth item of the will, decedent gives, devises, and bequeaths to each of his two sons, Henry E. Marsh and Moses Marsh, one-third of all the rest, residue, and remainder of his property, real and personal, upon the death of the widow.

The sixth item of the will is as follows:

"Upon the death of my beloved wife, I give, devise and bequeath to my son Henry E. Marsh the remaining third of all the rest, residue and remain-

der of all my property real and personal, in trust nevertheless to receive the rents and profits of the real property and apply them to the use of my son Charles Marsh during the term of his natural life, and upon his death to convey said lands in fee to his children then living; but, if the wife of my son Charles should die before him, then, upon her death, to convey said lands in fee to my said son Charles; the personal property shall be paid over to my son Charles as soon as my estate is settled by a judicial settlement before the Surrogate and the share ascertained; and I do hereby appoint my son Henry E. Marsh trustee for the purposes aforesaid."

[1] The question involved is whether the two legacies above specified shall be paid out of the personal estate, so far as the same may be sufficient for that purpose, or whether they shall be a charge exclusively upon the real estate and the personal property entirely exonerated from this burden. By the phraseology of the will they are charged upon the "real estate to the end that they be paid." The primary fund for payment of debts and legacies is the personal estate, and the land of the testator cannot be resorted to for that purpose until the personal estate is exhausted in the ordinary course of administration. Kingsland v. Murray, 133 N. Y. 170, 30 N. E. 845; Smith v. Atherton, 54 Hun, 172, 7 N. Y. Supp. 300. While this is the general rule, the testator may, of course, charge a legacy upon his real estate. McCorn v. McCorn, 100 N. Y. 511, 3 N. E. 480; Morris v. Sickley, 133 N. Y. 456, 31 N. E. 332; Jessup, Surr. Pr. (3d Ed.) 931. Whether such is the effect of the will or not is always a question of testator's intention as manifested by the provisions of the will. Hogan v. Kavanaugh, 138 N. Y. 417, 34 N. E. 292; Matter of McKay, 33 Misc. Rep. 520, 68 N. Y. Supp. 925. Proof of extrinsic facts existing at the time of making the will may be resorted to for the purpose of discovering such intention. McManus v. McManus, 179 N. Y. 338, 72 N. E. 235.

In the opinion in the case of Hoes v. Van Hoesen, 1 N. Y. 120, the rule is laid down as follows:

"The mere making of a provision for the payment of debts or legacies out of the real estate does not discharge the personalty. There must be an intention not only to charge the realty, but to exonerate the personalty, not merely to supply another fund, but to substitute that fund for the property antecedently liable. Thus in numerous cases it has been held that neither a charge of debts on the testator's lands generally, or on a specific portion of them, nor a devise upon trust for sale, however formally or anxiously framed, nor the creation of a term of years for the purpose of such charge, will exonerate the personalty."

In all these cases the charge upon the realty, or the condition that the devisee shall pay as directed, is deemed and taken to have been made in aid of the primary fund, and not in exoneration of it, unless there is an absolute disposition of all the personal estate of the testator. This will bears date November 11, 1902. Testator died March 5, 1904. At the time of making his will he owned the two farms referred to clear of incumbrance; but it does not appear from the evidence as to what personal estate he then possessed, but presumably he owned sufficient stock and farming utensils to operate these farms. [2] At the time of his death he owed something over $500. What his indebtedness may have been, if any, at the date of his will, is not

disclosed. It is incumbent on the parties claiming that these legacies are an exclusive charge upon the real estate to show affirmatively that it was the testator's intention to absolutely exonerate the personal estate from payment. 3 Wms. Exrs. (7th Am. Ed.) 159, 185, 189; Kelsey v. Western, 2 N. Y. 507; 2 Redf. Wills (3d Ed.) 210; Turner v. Mather, 86 App. Div. 172, 176, 83 N. Y. Supp. 1013.

In Briggs v. Carroll, 117 N. Y. 288, 22 N. E. 1054, it is said that:

"The deficiency must exist when the will is executed, and be so great and so obvious as to preclude any possible inference that the testator did not realize it, or that he may have expected and intended before his death to remove the difficulty.

"If the disparity, even though serious, is such that the testator might have been unconscious of its existence; or so dependent upon estimates of value that in the decedent's judgment it might have been adequate to the burden imposed; or such that he might reasonably expect to repair the deficiency before his death, the ground for inferring an intention to charge the land would disappear."

In view of the fact that the testator possessed, at the time of the making of his will, the two farms referred to with undoubtedly sufficient personal property thereon to successfully operate the same, he might have reasonably anticipated that his accumulations would be entirely adequate at his death to pay these specific bequests. The fact that he has by the terms of his will charged these legacies upon the land "to the end that they be paid" indicates nothing more than an intention that the lands should stand merely as security for the payment of the legacies in the ordinary way, in accordance with the general rule; that is, in the first instance out of the personalty. It is not sufficient, under all the circumstances, to establish an intent upon the part of the decedent to exclusively charge the payment of these legacies upon his realty; and it must accordingly be held that the personal estate, so far as the same is properly applicable thereto, must be applied in extinguishment of these legacies before the real estate can be used for that purpose.

Decreed accordingly.